# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Respondent/Plaintiff,

v.                                                   CIV 04-1096 JC/WPL
                                                      CR 01-0111 JC

FERNANDO MUJICA-LEON,

      Movant/Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Fernando Mujica-Leon and several co-defendants were charged with multiple offenses arising from a conspiracy to distribute cocaine over a seven-year period. (Doc. 578.)[1] After entering into a plea agreement with the United States, Mujica pled guilty before the Honorable John Conway to one count of conspiracy to possess with intent to distribute, and to distribute, more than 5 kilograms of cocaine. (Doc. 661 at 2; Tr. 7/23/03.) He was sentenced to 120 months of imprisonment. (Doc. 682.)

The matter is before me now on Mujica's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, in which he argues that he received ineffective assistance of counsel. (Doc. 726.) For the reasons that follow, I recommend that the Motion be denied.[2]

---

[1] All document number references are to CR 01-0111 JC.

[2] Because the motion and the files and records of the case conclusively show that Mujica is entitled to no relief, I find it unnecessary to conduct an evidentiary hearing. *See* 28 U.S.C. § 2255.

**LEGAL STANDARDS FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Conclusory assertions are insufficient to establish ineffective assistance. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

**SAFETY VALVE**

Mujica first argues that he was induced to plead guilty because he was led to believe that his sentence would be only 46 months under the safety valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. These provisions allow a defendant to receive a sentence below the statutory minimum if he meets several criteria, which include having no more than one criminal history point. *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1129 (10th Cir. 2003).

The plea agreement that Mujica signed states that the sentencing range was 10 years to life. (Doc. 661 at 2.) The agreement also states, "[N]o one can predict with certainty what guideline

range will be applicable . . . until after a presentence investigation," that Mujica would "not be allowed to withdraw the plea if the applicable guideline range is higher than expected," and that Mujica fully understood that "determination of sentencing range or guideline level, as well as the actual sentence imposed, is solely in the discretion of the Court." *Id.* at 2-3. The agreement acknowledges that Mujica might be eligible for the safety valve, but notes that his eligibility was contingent upon his having not more than one criminal history point. *Id.* at 3-4. Finally, the agreement states that Mujica's guilty plea did not result from promises other than those set forth in the agreement and that "[t]here have been no representations or promises from anyone as to what sentence the Court will impose." *Id.* at 5.

At the plea hearing, Judge Conway reiterated that the sentencing range was 10 years to life, that the stipulations in the plea agreement were not binding on the Court, that eligibility for the safety valve was contingent upon Mujica's having only one criminal history point, and that the plea agreement stated that the plea was not the result of any promises other than those set forth in the agreement. (Tr. 7/23/03 at 4-7.) In addition, Judge Conway specifically advised Mujica that although his attorney had given him his "best estimate" as to what his sentence would be, "that's all it is, is his best estimate." *Id.* at 5. Mujica pled guilty after indicating that he understood these warnings. *Id.* at 4-9.

At the sentencing hearing, Mujica's attorney stated that if Mujica had qualified for the safety valve, he could have received a 47-month sentence, but the presentence report included "the most horrific criminal history, just very, very, very far from what I was led to believe that we might expect after discussing the matter with my client." (Tr. 10/15/03 at 3.) As a result, Mujica did not qualify for the safety valve. *Id.* at 4. Counsel stated that he had explained to Mujica that his eligibility for

the 47-month sentence depended upon his having only one criminal history point, but Mujica refused to accept that. *Id.* at 5-7. Accordingly, counsel moved to withdraw the plea. The Court denied this motion. *Id.* at 6-7. Counsel then stated that Mujica "felt that the government and I were duty-bound to ensure that he got no more than 47 months[,] [a]nd I don't believe I ever said anything like that . . . ." *Id.* at 7. At this point, Mujica interjected, "It was 46 to 57 months . . . . That is why I signed that agreement, not because I was guilty . . . ." *Id.* at 7-8.

From this review of the record, it appears that counsel's sentencing advice was based on the belief that Mujica did not have an extensive criminal history. That belief turned out to be inaccurate. However, counsel was not deficient for failing to conduct an independent investigation to determine Mujica's criminal history because Mujica should have been aware of his own criminal history. *See United States v. Rhodes*, 913 F.2d 839, 844 (10th Cir. 1990). Moreover, a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *see also Silva*, 430 F.3d at 1099.

To the extent Mujica may be asserting that his attorney promised, rather than merely estimated, that his sentence would be 46 months, such an assertion is belied by the record. His attorney's statements at the sentencing hearing indicate that he did not promise Mujica a particular sentence. (Tr. 10/15/03 at 7.) Because counsel is an officer of the court, these statements were "'virtually made under oath.'" *United States v. Deberry*, 430 F.3d 1294, 1300 (10th Cir. 2005) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978)). The plea agreement states that Mujica fully understood that "determination of . . . the actual sentence imposed, is solely in the discretion of the Court" and that "[t]here have been no representations or promises from anyone as to what

sentence the Court will impose." (Doc. 661 at 3, 5.) At the plea hearing, Mujica stated under oath that he understood that what his attorney told him about his sentence was only an estimate. (Tr. 07/23/03 at 5.) "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Mujica has failed to demonstrate that his attorney's advice regarding sentencing was constitutionally deficient. Furthermore, because he pled guilty after being warned by both the plea agreement and Judge Conway that his sentence would be solely in the Court's discretion, Mujica cannot establish a reasonable probability that he would have insisted upon going to trial but for his attorney's erroneous sentence estimate or promise. *See Gordon*, 4 F.3d at 1571.

### CROSS-EXAMINATION OF EXPERT

Mujica also asserts that his attorney was deficient in his ability to cross-examine an expert regarding the weight, purity, and analysis of the cocaine, thus violating his right of confrontation. In pleading guilty, Mujica specifically waived his right to confront and cross-examine witnesses. (Tr. 7/23/03 at 4; Doc. 661 at 1-2.) Furthermore, this allegation of ineffectiveness is conclusory and speculative. Mujica does not allege that the expert's analysis was inaccurate or that he would have insisted upon going to trial but for his attorney's purported inability to effectively cross-examine the expert. Accordingly, he has not established ineffective assistance of counsel.

### RECOMMENDATION

I recommend that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 726) be denied.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE